E-FILED
Tuesday, 01 September, 2026 02:15:10 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **KACIE MAXWELL, individually and as parent and next friend of M.T. and her other minor children,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-cv-3247** |
| | ) | |
| **ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, et al.,** | ) | |
| **Defendants.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff Kacie Maxwell,[1] proceeding *pro se*, alleges multiple state agencies, public employees, and private citizens (altogether, twenty-one defendants) conspired to unlawfully take one of her children, M.T., from her care. Before the Court are three motions to dismiss filed by different groups of defendants (Docs. 43, 49, 65), and Plaintiff's Motion to Reinstate Claims and to Enforce Evidence Preservation.[2] (Docs. 23 and 68). For the following reasons, Defendants' Motions to Dismiss are GRANTED.

[1] This case was initially brought by Plaintiff and her mother, Dana Poindexter. The Court has since granted Poindexter's motion to withdraw as a plaintiff. (11/4/2025 Text Order).
[2] Plaintiff moves for a "litigation hold order" to preserve evidence in this case and prevent spoliation. (Doc. 68). The motion is DENIED as Plaintiff has not made an adequate showing that relief is warranted.

## I. BACKGROUND

In May 2024, Plaintiff was stabbed by her ex-partner, forcing her to seek new housing for her child, M.T., and herself. (Doc. 1-1 at ¶ 3). In the following months, M.T. rotated between staying with her grandmother, one of Plaintiff's friends, and Defendant Heather Robeck. (*Id.* at ¶ 4). During this time, Heather Robeck and her family members (collectively, the "Robecks")[3] are alleged to have tried to take M.T. from Plaintiff's custody. (*Id.* at ¶¶ 6–11). They purportedly provided false stories to a legal aid attorney, forged notarized documents, and coached M.T. on what to say to investigators in order to accomplish her removal from Plaintiff's custody. (*Id.* at ¶¶ 6–12). These and other acts by the Robecks prompted an investigation by the Illinois Department of Child and Family Services ("IL-DCFS") and subsequent child custody proceedings. (*Id.* at ¶¶ 9, 12). Plaintiff claims that many Defendants either knew or should have known the Robecks were lying about the accusations.

Plaintiff brings constitutional claims, a RICO claim, a forgery and fraud claim, a kidnapping claim, a loss of consortium claim, and finally claims that Defendants violated various federal regulations. She seeks damages and asks the Court for a preliminary injunction to stop a then-pending child removal proceeding. The Court previously denied Plaintiff's request for a preliminary injunction and dismissed her constitutional claims (Counts I, II, and III) under the *Younger* doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff's request for injunctive relief as to the wardship petition is moot based on the

[3] The "Robecks" include Heather, Jessie, and Sonja Robeck, as well as Kaylee and Emily Anderson.

Montgomery County State's Attorney's Office's voluntary dismissal of the wardship petition. (Docs. 23-1; 49).

Three groups of Defendants now bring separate motions to dismiss. The first is brought by the Missouri Department of Children and Family Services ("MO-DCFS") and their employees, Janice Wydman, Sara Lyerla-Walka, and Caroline Moyers (collectively, the "Missouri Defendants"). (Doc. 43). The second motion is brought by Defendants Barbara Adams, Andrew Affrunti, and Erin Mattson. (Doc. 49). The third motion is brought by the Illinois Department of Children and Family Services ("IL-DCFS") and their employees, Kimberley Bradley, Chancey Parker, Blake Heltsley, Jessica Hendrick, Stacey East, and Angelique Maxwell (collectively, the "Illinois Defendants"). (Doc. 65).

## II. DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). The Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations in the complaint as true and construing all reasonable inferences in the plaintiff's favor. *Id.* at 457. To state a claim for relief, the plaintiff need only provide "a short and plain statement of the claim" that shows she is entitled to relief, "sufficient to provide the defendant with fair notice of the claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation marks omitted). The complaint must set forth facts that plausibly demonstrate a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

547 (2007). A plausible claim is one that alleges factual content from which the court can reasonably infer that a defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). However, "even *pro se* litigants must follow procedural rules." *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (citation omitted); *see also McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**B. Analysis**

**(1) Personal Jurisdiction**

The Missouri Defendants argue the case must be dismissed for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). A court may exercise personal jurisdiction over out-of-state defendants when those defendants have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912–13 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. General jurisdiction exists "when the [defendants'] affiliations with the State in which suit is brought are so constant and pervasive as to render [them] essentially at home in the forum State." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697–98 (7th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). The Missouri Defendants are Missouri-based and do not conduct business in Illinois, so there is no general personal jurisdiction here in Illinois.

Exercise of specific personal jurisdiction has three requirements: 1) "the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;" 2) "the alleged injury must have arisen from the defendant's forum-related activities;" and 3) "the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

Here, Plaintiff's complaint alleges Defendant Moyers sent confidential and unverified reports to Defendant Heltsley, an Illinois-based investigator. (Doc. 1 at ¶ 5). In addition, Defendant Lyerla-Walka is alleged to have called the Montgomery County Sheriff to do a welfare check on M.T. (Doc. 1-1 at ¶ 20). The Seventh Circuit has explained that transmitted communications may be considered in minimum-contacts analyses, especially if they were purposefully sent to a forum resident knowing the communications "would most likely be read and have their effect in [the forum]." *Felland*, 682 F.3d at 676 n.3. Although Moyers's communication to Defendant Heltsley

allegedly contained fraudulent information that contributed, in part, to child-custody proceedings, that communication, coupled with a single telephone call, is insufficient to establish the minimum contacts necessary for personal jurisdiction in Illinois. Compare these sparse allegations with *Felland*, where the defendant was alleged to have "engaged in an ongoing fraudulent scheme that included several letters, multiple phone calls, and almost two dozen emails, all [sent] to the Fellands' home in Wisconsin." 682 F.3d at 676. Therefore, the claims against the Missouri Defendants are hereby dismissed as Plaintiff has not met her burden to establish their minimum contacts with Illinois.

**(2) Claims Brought on Behalf of Children**

Plaintiff brings her claims individually and as parent and next friend of M.T. and her other minor children. Generally, non-lawyer parents "may not, without the assistance of counsel, bring suit on behalf of a minor party." *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) (citations omitted). "This rule is designed to protect the interests of the minor party" and "guard[] the judiciary's authority to govern those who practice in its courtrooms." *Id.* (internal quotation marks omitted). Plaintiff, a non-attorney, cannot represent her children in this case as to Count I, alleging an equal protection "class-of-one" violation, or Count VIII, a loss of consortium claim.[4] Therefore, Plaintiff's claims are DISMISSED to the extent they are brought on behalf of her children.

[4] Illinois does not recognize a "loss of consortium" cause of action resulting from nonfatal injuries to a child, so it's a nonstarter. *See, e.g., Vitro v. Mihelcic*, 209 Ill. 2d 76, 92 (Ill. 2004).

**(3) Sovereign Immunity**

The Illinois and Missouri Defendants argue the Eleventh Amendment bars claims against the state agencies and their employees in their official capacities.[5] Plaintiff concedes that dismissal is appropriate and has otherwise waived the issue. (Doc. 44 at 4–5; Doc. 67 at 4). Therefore, the claims against the IL-DCFS and all official-capacity claims against their employees are DISMISSED.

The Illinois Defendants argue Plaintiff's state-law individual-capacity claims against the Illinois Defendants (Counts V, VI, and VIII) are only "nominally [] against the servants or agents of the State" and really "against the State of Illinois itself." *T.S. v. Cnty. of Cook*, 67 F.4th 884, 893–94 (7th Cir. 2023) (quoting *Sass v. Kramer*, 72 Ill. 2d 485, 491 (Ill. 1978)). Under the Illinois State Lawsuit Immunity Act, 945 ILCS 5/1 *et seq.*, those claims are barred as a suit against the State. Illinois courts apply the three *Healy* factors to determine whether a personal liability action is one against the State: "(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Healy v. Vaupel*, 133 Ill. 2d 295, 309 (Ill. 1990); *T.S.*, 67 F.4th at 893–94.

[5] State agencies are "arms of the state," immune from suit. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). State officials are also immune from suits against them in their official capacities. *Id.* at 907–08; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

Plaintiff does not meaningfully contest that her state-law individual-capacity claims are barred and are thereby waived. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (finding perfunctory and undeveloped arguments are waived). Because the allegations raised against the Illinois Defendants all arise out of their actions taken as IL-DCFS employees in the interests of IL-DCFS and Illinois, Plaintiff's claims are only nominally against them. Therefore, Plaintiff's state-law individual-capacity claims against the Illinois Defendants are DISMISSED.

**(4) Prosecutorial Immunity**

Defendant Affrunti was the state's attorney representing Illinois as petitioner in the now-terminated juvenile wardship proceeding concerning M.T. Prosecutors are absolutely immune from claims arising from conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (citing *Imbler*, 424 U.S. at 427) ("Prosecutors are absolutely immune for actions they undertake in their capacities as prosecutors, even including malicious prosecution unsupported by probable cause."). Qualified immunity is applied when the claims against the prosecutors arise from administrative or investigative conduct. *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-74 (1993). Because Plaintiff's minimal allegations concerning Affrunti are intimately associated with the wardship proceedings, Affrunti is entitled to absolute immunity and Plaintiff's claims against him are DISMISSED with prejudice. Notwithstanding the

immunity, Plaintiff's allegations against Affrunti are otherwise insufficient to state any claim for relief.

**(5) Guardian ad Litem Immunity**

Defendant Adams was the attorney appointed as guardian ad litem to represent M.T.'s interests in her juvenile wardship proceeding. Plaintiff alleges Adams did not make a "meaningful effort to investigate" M.T.'s best interests in part because she only sought to speak with Plaintiff's mother, Poindexter, and not Plaintiff. (Doc. 1 at ¶ 28).[6] Adams allegedly only tried to schedule one meeting with Plaintiff two days before a court hearing. Because the allegations against Adams occurred solely within the scope of her court-appointed duties, she is entitled to absolute immunity. "Guardians ad litem . . . are absolutely immune from liability for damages when they act at the court's direction" because "[t]hey are arms of the court . . . and deserve protection from harassment from disappointed litigants, just as judges do." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (citations omitted). Therefore, Plaintiff's claims against Adams are DISMISSED with prejudice.

**(6) Plaintiff's Public Defender**

Plaintiff alleges Defendant Mattson, her public defender in the wardship proceedings, refused to file motions on her behalf, was openly hostile, chastised her in open court and, accordingly, acted under color of state law for purposes of § 1983 liability. However, the Supreme Court has held that "a public defender does not act under color

[6] Poindexter was M.T.'s temporary guardian at the time. (Doc. 1-1 at ¶¶ 15–16, 25, 29).

of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dobson*, 454 U.S. 312, 325 (1981). The allegations against Mattson arise entirely out of her exercise of the traditional functions of counsel. Therefore, the claims against Defendant Erin Mattson are DISMISSED with prejudice.

**(7) Failure to State a Claim**

To the extent that any claim remains, Plaintiff's complaint, on the whole, fails to state any claim for relief. The complaint relies on labels and conclusory allegations and often fails to sufficiently identify the actions of each defendant to provide fair notice. For example, the complaint names Angelique Maxwell as a defendant and identifies her as an IL-DCFS supervisor overseeing Defendants East and Heltsley. It says nothing beyond that. Furthermore, Defendant Lyerla-Walka "had Montgomery County Sheriff do a welfare check on M.T.," (Doc. 1-1 at ¶ 20), and Defendant Wydman "left a hand written [sic] note on the door of [Plaintiff's] prior home with her name and two numbers," (*Id.* at ¶ 19), but are alleged to have done nothing else of apparent consequence. This theme is consistent throughout the complaint and warrants dismissal.

Additionally, Plaintiff often fails to set out sufficient facts to support her causes of action. Plaintiff's RICO claim must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006), and where fraud is alleged—as here—a plaintiff must meet heightened pleading standards, Fed. R. Civ. P. 9(b). Plaintiff failed to plead an enterprise, let alone any element with particularity. Counts V, VI, and VII are similarly deficient in these respects.

Moreover, Plaintiff has improperly introduced many additional allegations in her filings opposing the motions to dismiss. Courts may consider further elaboration of the facts insofar as they are consistent with the allegations in the complaint, *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *Early v. Banks Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992), but the complaint cannot be amended through arguments in response to a motion to dismiss, *Agnew v. NCAA*, 688 F.3d 328, 348 (7th Cir. 2012) (quotation omitted).

**(8) Use of Artificial Intelligence**

Finally, it appears that Plaintiff's briefings may have been drafted with the assistance of artificial intelligence. (*See* Doc. 44 (indicating document was exported from generative-AI website)). Plaintiff is admonished that litigants who use artificial intelligence do so at their own risk, as the obligations set forth in Federal Rule of Civil Procedure 11 apply equally to both attorneys and *pro se* litigants. *See Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970–71 (7th Cir. 2026). "[A]ll litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal." *Id.* at 970. When any litigant submits a legal filing to the court, they certify "that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the factual contentions have evidentiary support and the legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* (internal quotation marks omitted).

## III. CONCLUSION

Based on the foregoing reasons, Defendants' Motions to Dismiss (Docs. 43, 49, and 65) are GRANTED. Consistent with this Opinion, Plaintiff's claims are DISMISSED with and without prejudice. (Doc. 1). Plaintiff is granted leave to file an amended complaint within 21 days following the entry of this Opinion. Failure to do so will result in dismissal of this action with prejudice. Plaintiff's Motion to Reinstate Claims (Doc. 23) is MOOT. Plaintiff's Motion to Enforce (Doc. 68) is DENIED.

ENTER: September 1, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE